No. 2--96--1214

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

CLIFFORD P. BERUTTI and HELGA ) Appeal from the Circuit Court

H. BERUTTI, ) of Kane County.

                                )

Plaintiffs-Appellants, )

) No. 96--MR--35

v. )

)

STATE FARM MUTUAL AUTOMOBILE ) 

INSURANCE COMPANY,              )  Honorable

) R. Peter Grometer,

Defendant-Appellee. ) Judge, Presiding.

________________________________________________________________

JUSTICE McLAREN delivered the opinion of the court:

Plaintiffs, Clifford Berutti and Helga Berutti, appeal the circuit court's order granting summary judgment for defendant, State Farm Mutual Automobile Insurance Company (State Farm).  Plaintiffs sought a declaration that defendant was required to pay benefits for Helga Berutti's loss of consortium claim under plaintiffs' underinsured motorist coverage.  Defendant argued that it had tendered the one-person policy limit for Clifford Berutti's injuries and Helga's claim for loss of consortium was not a separate injury.  The trial court granted defendant's motion for summary judgment and denied plaintiffs' motion.  On appeal, plaintiffs contend that the court erred in holding that the policy did not provide separate coverage for Helga's loss of consortium claim and that, in any event, such an interpretation is contrary to public policy.

On June 10, 1994, plaintiffs' van collided with a car driven by Daniel Gallagher.  Gallagher was insured by a policy with bodily injury liability limits of $100,000 per person.  Clifford Berutti received the $100,000 per-person limit of Gallagher's policy to cover his personal injuries.

Plaintiffs owned a State Farm policy providing underinsured motorist coverage with limits of $100,000 per person and $300,000 per occurrence.  They filed a claim under the policy, contending that the amount received from Gallagher's insurer was insufficient to compensate for Clifford Berutti's injuries and Helga Berutti's loss of consortium.  When defendant denied the claim, the present action ensued.

As noted, the trial court granted defendant's summary judgment motion and denied plaintiffs' motion.  Plaintiffs filed a timely notice of appeal.

On appeal, the central issue is whether Clifford's bodily injuries and Helga's loss of consortium constitute a single injury within the meaning of their underinsured motorist coverage or whether Helga's loss of consortium claim constitutes a separate injury for which a separate "per person" limit applies.  Plaintiffs argue that the policy is ambiguous and, as such, must be construed most strongly against the insurance company, which drafted it.

Defendant responds that the policy unambiguously provides that "one person" means "one person injured."  Because only Clifford was physically injured and Helga's claim is a direct consequence of that injury, plaintiffs would be entitled only to the "per person" liability limit, or $100,000.  Because Clifford has already received the $100,000 limit applicable to both policies from Gallagher's insurer, no further amount is due from defendant.

Defendant's policy provides:

"
Underinsured Motor Vehicle
--means a land motor vehicle:

1.  the ownership, maintenance or use of which:

a. is insured or bonded for bodily injury liability at the time of the accident; and

b. has resulted in 
bodily injury
 of an 
insured
.

* * *

Coverage W

1. The amount of coverage is shown on the declarations page under 'Limits of Liability--W--Each Person, Each Accident.'  Under 'Each Person' is the amount of coverage for all damages due to 
bodily injury
 to one person.  '
Bodily injury
 to one 
person
' includes all injury and damages to others resulting from this 
bodily injury
."  (Emphasis added.)

The policy further provides, "The limits of liability are not increased because: *** more than one 
person
 is insured at the time of the accident."

The parties to an insurance policy are bound to the agreement they made.  
Western Casualty & Surety Co. v. Brochu
, 105 Ill. 2d 486, 495 (1985).  An insurance contract is to be construed as written if it is unambiguous and not contrary to public policy.  
Menke v. Country Mutual Insurance Co.
, 78 Ill. 2d 420, 423-24 (1980).  A clause in a policy is ambiguous if it is subject to more than one reasonable interpretation.  
United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 74 (1991).  Any doubts and ambiguities must be resolved in favor of the insured.  
United States Fidelity & Guaranty Co.
, 144 Ill. 2d at 74.

Courts that have considered whether a loss of consortium claim constitutes a separate injury under an underinsured motorist policy have looked to the language of the policy.  For example, in 
Creamer v. State Farm Mutual Automobile Insurance Co.
, 161 Ill. App. 3d 223 (1987), the policy provided that each insured was covered " 'for all damages due to bodily injury to one person' " and defined bodily injury as " 'bodily injury to a person and sickness, disease or death which results from it.' "  
Creamer
, 161 Ill. App. 3d at 224.  
Creamer
 held that the policy term "one person" had been consistently construed as "one person injured" and that that construction had been applied to all damages, including loss of consortium, sustained by all persons due to an injury to one person.  
Creamer
, 161 Ill. App. 3d at 224; see also 
Cross v. Country Cos.
, 188 Ill. App. 3d 847, 850 (1989).  Thus, the "per person," rather than the "per occurrence," limit applied.

Conversely, in 
Stearns v. Millers Mutual Insurance Ass'n
, 278 Ill. App. 3d 893 (1996), the relevant policy language provided:

" 'The limit of liability *** for each person *** is our maximum limit of liability for all damages including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident.' "  
Stearns
, 278 Ill. App. 3d at 896.

The court acknowledged that defendant's reading of this language to provide that $100,000 was the maximum payable when any one person suffers bodily injury in one accident was reasonable.  However, the court found an ambiguity in the policy based on the definition of who was an "insured."  The court noted that the policy could also be read as providing that each person who was an "insured" under the policy was entitled to a separate $100,000 liability limit.  
Stearns
, 278 Ill. App. 3d at 897; see also 
General Casualty Co. v. McCowan
, 221 Ill. App. 3d 96 (1991).

Except for brief references to 
Stearns
, plaintiffs do not discuss these cases or compare the policy language under consideration to that at issue in this case.  They merely argue that because the policy is written in "legalese" we must find it to be ambiguous and, accordingly, construe it in their favor.

Contrary to plaintiffs' argument, we do not find the relevant policy language to be ambiguous.  It clearly provides that bodily injury to one person "includes all injury and damages to others resulting from this 
bodily injury
."  (Emphasis in original.)  Moreover, unlike the policy in 
Stearns
, defendant's policy provides that "[t]he limits of liability are not increased because *** more than one 
person
 is insured at the time of the accident."  (Emphasis in original.)  Because plaintiffs do not claim that anyone other than Clifford Berutti was physically injured, these provisions unambiguously limit defendant's liability to the per-person limitation rather than the per-occurrence limitation.

Significantly, plaintiffs do not point to any specific portion of the policy that they find to be ambiguous.  They also do not suggest a reasonable alternative reading for the passages quoted above.  The court did not err in holding that the policy unambiguously excludes the coverage plaintiffs seek.

Plaintiffs also argue, however, that, in determining whether a vehicle is underinsured, the comparison should not be made to the liability limit of the tortfeasor's policy, but to the amount actually available to the injured party after payments to third parties.  In other words, if a tortfeasor has a policy with a $100,000 limit, but has paid $50,000 to other parties injured in the same accident, his policy should be considered as having a $50,000 limit in determining whether underinsured motorist coverage applies.

It is difficult to understand how this argument helps plaintiffs' case.  Apparently, plaintiffs contend that the $100,000 paid to Clifford Berutti should be viewed as exhausting Gallagher's coverage so that his policy limit should be viewed as $0 when compared to plaintiffs' underinsured motorist coverage.

The language of the policy, tracking the statute, defines an underinsured motor vehicle as one covered by a policy in which:

"2.  [T]he limits of liability for bodily injury liability:

a.   are less than the limits 
you
 carry for underinsured motor vehicle coverage under this policy; or

b. have been reduced by payments to 
persons
 other than an 
insured
 to less than the limits 
you
 carry for underinsured motor vehicle coverage under this policy."  (Emphasis in original.)

The policy thus clearly limits the reduction to payments made to persons other than an insured.  Moreover, this issue is still controlled by the language cited above defining what constitutes an injury.  Because the per-person liability refers to one person injured, if the injured person receives the maximum per-person liability, the coverage is deemed exhausted.  Here, plaintiffs stipulated that Clifford Berutti received the $100,000 liability limit from Gallagher's policy.

Cummins v. Country Mutual Insurance Co.
, 281 Ill. App. 3d 5 (1996), 
appeal allowed
, 168 Ill. 2d 586 (1996), and 
Hathaway v. Standard Mutual Insurance Co.
, 285 Ill. App. 3d 67 (1996), 
leave to appeal pending
, are distinguishable.  In 
Cummins
, the at-fault driver's $50,000 was exhausted by paying $35,000 to plaintiffs and $15,000 to passengers in the at-fault driver's car.  The court held that plaintiffs were entitled to collect $15,000 from their underinsured motorist coverage to "fill the gap" between the tortfeasor's liability limit and the amount plaintiffs actually recovered.  However, the payments there were made to third parties, not to another insured under the same policy.

Cummins
 and 
Hathaway
 certainly do not stand for plaintiffs' broad proposition that an insured may recover under an underinsured motorist policy any time the tortfeasor's insurance fails to compensate fully the insured for his or her injuries.  Such a reading would violate the purpose of the statute and the insurance contract by effectively increasing the limit of underinsured motorist coverage to the amount of the insured's damages without requiring the insured to pay for the additional coverage.

In 
Gober v. State Farm Mutual Automobile Insurance Co.
, 263 Ill. App. 3d 846 (1994), 
plaintiffs, Charles and Helen Gober, had a State Farm policy providing $100,000 of underinsured motorist coverage.  After Charles was injured in an accident with another driver, the latter's insurance company paid Charles $10,000 for his personal injuries and Helen $10,000 for her loss of consortium.  These payments exhausted the limits of that policy.  In their suit against State Farm, plaintiffs claimed that the husband was entitled to $90,000 in underinsured motorist benefits.  State Farm contended that it owed only $80,000.  This court agreed with State Farm, stating:

"The record is clear *** that Helen did, indeed, recover under the bodily injury insurance on the car of Galvin, the underinsured motorist.  Since Allstate's payment to Helen was made as part of a larger, overall payment for the bodily injury caused to Charles, State Farm Fire properly reduced its benefit by the $10,000 paid to Helen in addition to the $10,000 paid to Charles."  
Gober
, 263 Ill. App. 3d at 850.

Plaintiffs also contend that limiting their recovery to the per-person rather than the per-occurrence limit is contrary to public policy.  However, they present no reasoned argument or citations to relevant authority on this issue.  In fact, 
Stearns
, on which they heavily rely, is directly contrary to their position.  Although 
Stearns
 held that plaintiffs were entitled to the per-occurrence limit under the terms of the specific policy in question, the court explicitly rejected the contention that the opposite result would be contrary to public policy.  
Stearns
, 278 Ill. App. 3d at 899.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

GEIGER, P.J., and INGLIS, J., concur.