5-00-0708

(text box: 1)
 NO. 5-00-0708

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

________________________________________________________________________

REBECCA THURMAN, )  Appeal from the

)  Circuit Court of

     Plaintiff-Appellee, )  Jackson County.

)

v. )  No. 00-MR-4

)  Consolidated with

GRINNELL MUTUAL REINSURANCE )  No. 00-MR-5

COMPANY, ) 

   ) 

     Defendant-Appellant, ) 

)

and )

)

NORTHLAND INSURANCE COMPANY and)

UNION AUTO INDEMNITY COMPANY, )

)

     Defendants-Appellees. )

----------------------------------------------------------)

)

GRINNELL MUTUAL REINSURANCE )

COMPANY, )

)

     Plaintiff-Appellant, )

)

v. )

)

REBECCA THURMAN, NORTHLAND )

INSURANCE COMPANY, and UNION )

AUTOMOBILE INDEMNITY COMPANY, )  Honorable

)  William G. Schwartz,

     Defendants-Appellees. )  Judge, presiding.

________________________________________________________________________

JUSTICE WELCH delivered the opinion of the court:

The issue in this case is whether Rebecca Thurman (plaintiff) is entitled to underinsured-motorist coverage from Grinnell Mutual Reinsurance Company (defendant) where the limits of the underinsured-motorist coverage are less than the limits of the bodily-injury liability insurance of the owner or operator of the underinsured motor vehicle.  The circuit court of Jackson County granted plaintiff's motion for summary judgment, denied  defendant's, and declared that the underinsured-motorist coverage from defendant provides coverage for the claims of plaintiff.  Defendant appeals this decision.  For the following reasons, we reverse the judgment of the circuit court.

The facts in this case are undisputed.  On November 13, 1997, plaintiff and Shelley Huffman were passengers in an automobile owned and operated by Clarence Huffman (Huffman).  While traveling on an Illinois highway, they were involved in an automobile collision when Prudence Smout, the driver of an oncoming vehicle, crossed the center line.  As a result of the collision, Huffman was killed, and Shelley Huffman and plaintiff suffered various injuries.

At the time of the accident, Smout, the at-fault driver, was insured by State Farm Insurance Company (State Farm).  Her insurance policy provided for liability limits of $50,000 per person and $100,000 per accident.  On July 20, 1999, State Farm paid $100,000 to the court and filed an interpleader action seeking a determination as to the distribution of the $100,000 for the benefit of the injured parties.  Following a hearing and a determination by the court regarding the extent of the injuries suffered by the parties involved, the court apportioned $9,070 of the $100,000 to plaintiff.

Huffman, the driver of the vehicle in which plaintiff was a passenger, was insured by defendant.  The policy issued by defendant to Huffman provided underinsured-motorist coverage for his passengers in the amount of $25,000 per person and $50,000 each occurrence.  Plaintiff sought arbitration with defendant, seeking to recover up to $25,000 under Huffman's policy, after offsetting the $9,070 received from State Farm.  Defendant refused to arbitrate, claiming that under section 143a-2(4) of the Illinois Insurance Code (Code) (215 ILCS 5/143a-2(4) (West 1998)), the maximum amount payable by defendant to plaintiff for underinsured-motorist benefits is zero because the underinsured-motorist-coverage limits provided for in Huffman's policy do not exceed the liability limits in Smout's policy.

On January 13, 2000, plaintiff filed a complaint in the circuit court of Jackson County.  Plaintiff sought a declaratory order requiring defendant to engage in arbitration with plaintiff under the policy.  On January 14, 2000, defendant filed a complaint in the same court.  Defendant sought a declaratory judgment stating that there is no underinsured-motorist coverage available.  The two complaints were consolidated on March 6, 2000.

On July 19, 2000, plaintiff filed a motion for summary judgment.  Plaintiff asked the court to find that plaintiff is entitled to underinsured-motorist coverage from defendant in the amount of $25,000, less any set-off for plaintiff's prior recovery from State Farm.  In support of her motion, plaintiff cited the Illinois Supreme Court case of 
Cummins v. Country Mutual Insurance Co.
, 178 Ill. 2d 474 (1997).  In 
Cummins
, in a plurality decision, the supreme court
 
held that to the extent that the amount of liability insurance 
actually recovered
 is less than the amount of underinsured-motorist coverage, the liable driver is considered underinsured and the injured party is entitled to underinsured-motorist benefits.  
Cummins
, 178 Ill. 2d at 486.

On July 27, 2000, defendant filed a motion for summary judgment and argued that plaintiff is not entitled to any benefits because the limits of liability insurance in Smout's policy are greater than the limits of the underinsured-motorist coverage in the policy issued to Huffman by defendant.  In support of its argument, defendant cited section 143a-2(4) of the Code, specifically, a portion that was amended to be effective after the accident giving rise to the 
Cummins
 case and therefore not considered by the supreme court in 
Cummins
.  Defendant argued that the amended portion specifically precludes plaintiff from recovering benefits because, under the statute, where the 
limits
 of the bodily-injury liability insurance of the owner or operator of the underinsured motor vehicle exceed the 
limits
 of the underinsured-motorist coverage, no amount is payable.

On October 5, 2000, the circuit court granted plaintiff's motion for summary judgment and denied defendant's.  The circuit court examined 
Cummins
 and the amended portion of section 143a-2(4), and it ruled that section 143a-2(4) allows plaintiff to "recover the entire amount of the tortfeasor's liability policy and the difference between that policy and the amount of the underinsured coverage."  Defendant now appeals.

Before addressing the issue raised by defendant on appeal, we begin by noting that plaintiff has not taken part in this appeal.  Plaintiff did not file an appellee brief, and plaintiff did not participate in oral argument.  However, as defendant's brief and the record are sufficient to resolve this issue, we shall consider this appeal.  See 
First Capitol Mortgage Corp.
 
v. Talandis Construction Corp.
, 63 Ill. 2d 128, 133 (1976).  

A circuit court's decision to grant a motion for summary judgment is reviewed 
de novo
.  
American Service Insurance Co. v. Passarelli
, 323 Ill. App. 3d 587, 589 (2001).  Where there is no dispute as to an issue of material fact, the sole function of this court is to determine whether the trial court's judgment was correct as a matter of law.  
Cates v. Cates
, 156 Ill. 2d 76, 78 (1993).  We need not give deference to the judgment of the trial court.  
Advincula v. United Blood Services
, 176 Ill. 2d 1, 12 (1996).

The dispositive question before this court is whether section 143a-2(4) of the Code prohibits plaintiff from recovering any underinsured-motorist-coverage benefits from defendant under a policy issued to Huffman.  Defendant argues that section 143a-2(4) of the Code clearly prohibits the payment of underinsured-motorist-coverage benefits because that section specifically states that the "maximum amount payable" shall not exceed the amount by which the 
limits
 of liability of the underinsured-motorist coverage 
exceed
 the 
limits
 of the bodily-injury liability insurance of the owner or operator of the underinsured motor vehicle.  215 ILCS 5/143a-2(4) (West 1998).  Defendant argues that because, in the instant case, the limits of liability of the underinsured-motorist coverage do not exceed the limits of the bodily-injury liability insurance of the owner or operator of the underinsured motor vehicle, that maximum amount payable is zero, so plaintiff is entitled to no benefits from defendant.  Defendant acknowledges our supreme court's decision in 
Cummins
 but argues that it is inapplicable because it dealt with section 143a-2(4) before the effective date of the amendment that is applicable to the instant case.  We begin our analysis by turning first to section 143a-2(4) of the Code and then to the 
Cummins
 decision.  

Since January 1, 1997, section 143a-2(4), the underinsured-motorist provision of the Code, states in pertinent part:  

"For the purpose of this Code the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance[,] or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily[-]injury liability[-]insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle[] is less than the limits for underinsured[-motorist] coverage provided the insured as defined in the policy at the time of the accident.  The limits of liability for an insurer providing underinsured[-]motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily[-]injury  insurance policies, bonds[,] or other security maintained on the underinsured motor vehicle.  
However, the maximum amount payable by the underinsured[-]motorist[-]  coverage carrier shall not exceed the amount by which the limits of the  underinsured[-]motorist coverage exceeds [sic] the limits of the bodily[-]injury liability insurance of the owner or operator of the underinsured motor vehicle.
"  (Emphasis added.)  215 ILCS 5/143a-2(4) (West 1998). 

The italicized sentence was added by Public Act 89-658, effective January 1, 1997.  1996 Ill. Laws 3514-15.

In 
Cummins v. Country Mutual Insurance Co.
, 178 Ill. 2d 474 (1997), the Illinois Supreme Court addressed a fact pattern similar to that in the case at bar.  In 
Cummins
, the plaintiff (Cummins) was injured in a two-car automobile accident and sustained over $50,000 in damages.  The accident occurred in 1992.  Cummins was a passenger in a car insured by a policy issued by defendant (Country Mutual), which provided underinsured-motorist benefits in the amount of $50,000 per person and $100,000 per accident.  
Cummins
, 178 Ill. 2d at 476.  The motorist who collided with the Country Mutual vehicle was determined to be at fault and had insurance with identical liability limits of $50,000 per person and $100,000 per accident.  
Cummins
, 178 Ill. 2d at 475-76.  

After Cummins received a good-faith settlement of $35,000 from the at-fault driver's insurance company, with the balance of the liability proceeds going to the injured passengers in the at-fault driver's vehicle, Cummins sued Country Mutual and sought the $15,000 difference between the $35,000 received and the $50,000 limit of County Mutual's underinsured-motorist coverage.  Country Mutual filed a motion to dismiss, contending that the at-fault driver's vehicle was not "underinsured" as defined in the policy and arguing that, under section 143a-2(4) of the Code, the at-fault driver's vehicle was not underinsured because the at-fault driver's liability limits were not less than the limits of underinsured-motorist coverage.  
Cummins
, 178 Ill. 2d at 476.  The trial court granted Country Mutual's motion to dismiss, the appellate court reversed, and the case then proceeded to the supreme court.

In a plurality decision, the supreme court framed the issue as follows: "[W]hether [Cummins] could state a claim to recover the shortfall between his underinsured-motorist policy limits and the amount he actually recovered from the liable driver's insurance, when the liable driver's policy has limits identical to [Cummins'] underinsured-motorist coverage, but the coverage was exhausted by payments to other injured claimants."  
Cummins
, 178 Ill. 2d at 476.  The supreme court then began its decision by examining section 143a-2(4) of the Code, which defines an underinsured motor vehicle, and it noted that any conflict between statutory and insurance policy provisions will be resolved in favor of the statutory provisions.  
Cummins
, 178 Ill. 2d at 483.  At the time of the accident in 
Cummins
, the statute read as follows:

"For the purpose of this Code the term 'underinsured motor vehicle' means a motor vehicle whose ownership, maintenance[,] or use has resulted in bodily injury or death of the insured, as defined in the policy, and for which the sum of the limits of liability under all bodily[-]injury liability[-]insurance policies or under bonds or other security required to be maintained under Illinois law applicable to the driver or to the person or organization legally responsible for such vehicle and applicable to the vehicle[] is less than the limits for underinsured[-motorist] coverage provided the insured as defined in the policy at the time of the accident.  The limits of liability for an insurer providing underinsured[-]motorist coverage shall be the limits of such coverage, less those amounts actually recovered under the applicable bodily[-]injury insurance policies, bonds[,] or other security maintained on the underinsured motor vehicle."  215 ILCS 5/143a-2(4) (West 1992).

Missing from this version of the statute is the sentence that was added by Public Act 89-658, effective January 1, 1997.  Although the amendment was effective at the time the supreme court's decision in 
Cummins
 was filed, the court makes no mention of the amendment.

In analyzing the statute before it, the 
Cummins
 plurality agreed with Cummins that it was "unclear from the definition [contained in the first sentence of section 143a-2(4)] whether underinsured-motorist status should be determined by comparing the limits of [Cummins'] underinsured-motorist coverage to the stated limits of liability coverage or to the recoverable limits."  
Cummins
, 178 Ill. 2d at 480-81.  As the plurality did not believe that the definition in the first sentence expressly referred to the stated policy limits, as opposed to the amount of liability insurance actually recovered, it turned to the second sentence, which contains a specific reference to the amount of insurance proceeds actually recovered.  Then, reading the statute as a whole, the plurality concluded that "the amount actually recovered may be the appropriate figure to be used in determining whether a vehicle is underinsured."  
Cummins
, 178 Ill. 2d at 481.  By so finding, the plurality explicitly rejected a line of appellate court cases that had held that the second clause of the statute should only be examined insofar as there had already been an initial determination that the at-fault driver's vehicle was underinsured.  In conclusion, the plurality held that a determination as to whether a vehicle is underinsured must be made by comparing the amount of underinsured-motorist coverage to the amount of liability coverage 
actually
 recovered from the at-fault driver.  
Cummins
, 178 Ill. 2d at 485-86.

In a special concurrence by then-Chief Justice Freeman, he stated that he agreed with the result of the plurality but that he believed the reasoning to be flawed.  Justice Freeman subscribed to the view set forth by the line of appellate court cases that had held that the language of the statute reveals a "two-part" inquiry that must be utilized in determining whether an insured is entitled to underinsured-motorist coverage.  
Cummins
, 178 Ill. 2d at 487 (Freeman, C.J., specially concurring).  Justice Freeman admitted that when applying the facts of 
Cummins
 to this test, because the liability limits were equal, the vehicle that injured Cummins was not underinsured under the statute and, therefore, an examination of the second sentence was "wholly irrelevant."  
Cummins
, 178 Ill. 2d at 488-89 (Freeman, C.J., specially concurring).

However, Justice Freeman still agreed with the result of the plurality.  Justice Freeman noted that when a strict rendering of a statute produces an "absurd result" which the legislature could not have contemplated, the courts are bound to presume that those consequences were not intended and the courts must adopt a construction which it may be reasonable to presume was contemplated by the legislature.  
Cummins
, 178 Ill. 2d at 489-90 (Freeman, C.J., specially concurring).  Justice Freeman noted that under the facts in 
Cummins
, although a face-value comparison of the underinsured-motorist limits and the at-fault driver's liability limits would show that they were equal on paper, in reality, because the at-fault driver's liability limits were depleted by previous payouts to other claimants, they were unequal.  
Cummins
, 178 Ill. 2d at 490 (Freeman, C.J., specially concurring).  According to Justice Freeman, "Under these circumstances, an absurd and unfair result obtains when the precise language in the first sentence [of the provision] is applied to Cummins."  
Cummins
, 178 Ill. 2d at 490 (Freeman, C.J., specially concurring).  Justice Freeman simply could not "believe that the legislature intended underinsured-motorist coverage in this state to be dependent upon the fortuity of being involved in an accident in which only a single person is injured and hence only a single claim is made against the at-fault driver's liability policy."  
Cummins
, 178 Ill. 2d at 491 (Freeman, C.J., specially concurring).  Accordingly, Justice Freeman believed that the only way to effectuate the General Assembly's intent and avoid an absurd result was to construe the first sentence so that the vehicle of the at-fault driver would be deemed an underinsured motor vehicle whenever the amount of that driver's liability coverage was less than the amount of the insured's underinsured-motorist coverage because of a payment of proceeds to other claimants.  
Cummins
, 178 Ill. 2d at 492 (Freeman, C.J., specially concurring).

In a dissent filed by Justice Heiple and joined by Justice Miller, Justice Heiple characterized the decision of the plurality and special concurrence as "an act of judicial legislation, defying the will of the people as expressed through their elected representatives."  
Cummins
, 178 Ill. 2d at 493 (Heiple, J., dissenting).  Justice Heiple pointed out that the approach adopted by the majority was once taken by the General Assembly but that the General Assembly then "changed the basis of underinsured-motorist liability from the 
insured's damages
 to the 
relative limits of liability specified in the policies of the parties involved in the accident
."  (Emphasis in original.)  
Cummins
, 178 Ill. 2d at 494 (Heiple, J., dissenting).  Justice Heiple noted, "Until the [appellate court] decision in this case, every Illinois court which had considered the current version of the statute *** agreed that the provision makes underinsured[-motorist] coverage contingent on the limits of liability specified in the policies of those involved in the accident."  
Cummins
, 178 Ill. 2d at 494 (Heiple, J., dissenting).  

Justice Heiple stated, "Although the General Assembly has had ample opportunity to disturb these decisions through recent amendments to section 143a-2, it has declined to do so."  
Cummins
, 178 Ill. 2d at 495 (Heiple, J., dissenting).  Finally, although Justice Heiple believed that the plurality and the special concurrence offered persuasive reasons for the State of Illinois to require an automobile insurer to pay the underinsured-motorist coverage limits specified in its policy whenever the insured sustained losses which were not fully covered by the liability of the driver at fault, he believed that such a decision must rest with the General Assembly and not with the courts.  
Cummins
, 178 Ill. 2d at 496 (Heiple, J., dissenting).

As we indicated earlier, the decision in 
Cummins
 was made without taking into consideration the third sentence in amended section 143a-2(4), which provides, "However, the maximum amount payable by the underinsured[-]motorist[-]coverage carrier shall not exceed the amount by which the limits of the underinsured[-]motorist coverage exceeds [
sic
] the limits of the bodily[-]injury liability insurance of the owner or operator of the underinsured motor vehicle."  215 ILCS 5/143a-2(4) (West 1998).  After reviewing defendant's arguments and the supreme court's decision in 
Cummins
, we believe that the amendment to the statute clearly indicates the General Assembly's intent to restrict underinsured-motorist-coverage carriers from providing benefits where the 
limits
 of the bodily-injury liability insurance of the owner or operator of the underinsured motor vehicle exceed the 
limits
 of the underinsured-motorist coverage. 

When construing a statute, a court must read the statute as a whole, give the statutory language its plain meaning, and import to the statute the fullest possible meaning to which it is susceptible.  
People v. Ferrell
, 277 Ill. App. 3d 74, 77 (1995).  The primary rule of statutory construction is to ascertain and give effect to the true intent of the legislature, and legislative intent is best determined by the language of the statute.  
Augustus v. Estate of Somers
, 278 Ill. App. 3d 90, 97 (1996).  Where the statutory language is not ambiguous, it will be given effect without resort to other aids for construction.  
Augustus
, 278 Ill. App. 3d at 97.

The version of section 143a-2(4) in effect at the time of the accident in the case at bar provides, "[T]he 
maximum amount payable
 by the underinsured[-]motorist[-]coverage carrier 
shall not exceed
 the amount by which the 
limits
 of the underinsured[-]motorist coverage 
exceeds
 [
sic
] the 
limits
 of the bodily[-]injury liability insurance of the owner or operator of the underinsured motor vehicle."  (Emphasis added.)  215 ILCS 5/143a-2(4) (West 1998).  Plugging in the undisputed numbers for the factors in the equation above, this means that the "maximum amount payable" by defendant (the underinsured-motorist-coverage carrier) shall not exceed the amount by which $25,000 (the limits of the underinsured-motorist coverage) exceeds $100,000 (the limits of the bodily-injury liability insurance of Smout, the owner or operator of the underinsured motor vehicle).  Because $25,000 does not exceed $100,000, or because it can be said to exceed $100,000 by zero, under the clear language of the statute, the maximum amount payable by defendant under the statute is $0.

We find no ambiguity in the third sentence of section 143a-2(4).  In fact, we believe the addition of this third sentence makes the General Assembly's intentions perfectly clear.  Interestingly, this statute was not amended regarding this issue until after this court issued its decision in 
Cummins
, which, as pointed out by the dissent in the supreme court's decision in 
Cummins
, provided a rendering of the statute different from "every Illinois court" that had previously considered the statute.  
Cummins
, 178 Ill. 2d at 494 (Heiple, J., dissenting).  The legislature is presumed to have been aware of judicial decisions interpreting the statute and to have acted with this knowledge.  
Morris v. William L. Dawson Nursing Center, Inc.
, 187 Ill. 2d 494, 499 (1999).  Accordingly, we can presume that the General Assembly was aware of this court's decision in 
Cummins
, as it was not until this time that the legislature decided to take action to have this section amended and to make clear that a determination regarding the maximum amount payable by the underinsured-motorist-coverage carrier is to be based on a comparison of the appropriate 
limits
.

Finally, although we agree with Justice Heiple's dissent in 
Cummins
 in that there are persuasive reasons for the State of Illinois to require an automobile insurer to pay the underinsured-motorist coverage limit specified in its policy whenever the insured sustains losses which are not fully covered by the liability of the driver at fault, we also agree that this decision must come from the General Assembly and not by judicial legislation.  In reviewing the General Assembly's latest amendment to section 143a-2(4), we believe it is clear that where the 
limits
 of the underinsured-motorist coverage do not exceed the 
limits
 of the bodily injury liability insurance of the owner or operator of the underinsured motor vehicle, there is no amount payable by the underinsured-motorist-coverage carrier.  Accordingly, because the underinsured-motorist coverage of Huffman's policy is lower than the liability of Smout's policy, the statute mandates that there is no amount payable by defendant.  Therefore, the circuit court should have granted defendant's motion for summary judgment and denied plaintiff's.

Accordingly, we reverse the judgment of the circuit court, and under our powers under Supreme Court Rule 366 (155 Ill. 2d R. 366), we enter an order granting defendant's motion for summary judgment and denying plaintiff's.

Reversed; judgment entered.

KUEHN and RARICK, JJ., concur.

                                      

COMMENTS AND ANNOTATIONS
Text Box 1:

TEXT BOXES
NOTICE

Decision filed 01/29/02.  The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.