838 N.E.2d 172 (2005)
361 Ill. App.3d 916
297 Ill.Dec. 685
ILLINOIS FARMERS INSURANCE COMPANY, Plaintiff-Appellee,
v.
Urszula MARCHWIANY, Individually and as Administrator of the Estate of Boguslaw Marchwiany; Miroslaw Boguslaw Marchwiany, Stanley Mark Marchwiany, Defendants-Appellants.
No. 1-04-3348.
Appellate Court of Illinois, First District, Sixth Division.
October 28, 2005.
*173 Mary F. Sitko, Lewis Brisbois Bisgaard & Smith, LLP, Chicago, for Plaintiff-Appellee.
Gregory A. Harris, Law Offices of Gregory A. Harris, Maywood, for Defendants-Appellants.
Justice FITZGERALD SMITH delivered the opinion of the court:
In a declaratory action dispute over the limits of underinsured motorist (UIM) coverage, defendants Urszula Marchwiany, individually and as administrator of the estate of Boguslaw Marchwiany, Miroslaw Boguslaw Marchwiany, and Stanley Mark Marchwiany (collectively, defendants)[1] appeal the order entered by the circuit court on cross-motions for summary judgment. The court denied defendants' motion, but granted plaintiff Illinois Farmers Insurance Company's (Farmers) motion, in which Farmers sought a declaration that the per-person UIM coverage limit applied to defendants' claims. On appeal, defendants' primary contention is that the court improperly failed to find the $300,000 per-occurrence UIM coverage limit applicable to their claims. For the reasons that follow, we affirm.

BACKGROUND
On September 28, 2000, Boguslaw Marchwiany was operating a vehicle that was insured under a policy issued by American Family Insurance Company (American *174 Family). He was driving south on Mannheim Road, as was Peter Gonzalez. Kashonda Milliner was driving north on Mannheim. Gonzalez made a left turn in front of Milliner; Milliner's car struck the rear of the Gonzalez vehicle, then traveled into the southbound lanes of Mannheim, striking Boguslaw's vehicle. Boguslaw died from the injuries he sustained in that accident.
Boguslaw's wife Urszula, who is the administrator of his estate, and sons, Miroslaw Boguslaw and Stanley Mark, are the defendants in this action.
Boguslaw had an automobile liability policy (No. 22-14754-62-67) issued by Farmers (the Farmers policy) with UIM coverage limits of $100,000 per person and $300,000 per occurrence (referred to as $100,000/$300,000 coverage) that was effective on the date of his fatal accident. The American Family policy on the vehicle Boguslaw drove that day had the same UIM coverage limits of $100,000/$300,000.
Boguslaw's estate filed legal action against Gonzalez and Milliner. In settlement of the claims, Gonzalez paid his liability limit of $100,000 and Milliner paid $19,000 of her $20,000 liability limit. Defendants then made UIM claims for Boguslaw's personal injuries and for wrongful death to Farmers, which Farmers contends are not applicable for this occurrence. American Family paid defendants $80,000 in UIM coverage for which defendants released American Family from further liability.
In April 2003, Farmers filed its complaint for declaratory relief pursuant to section 2-701 of the Code of Civil Procedure. 735 ILCS 5/2-701 (West 2002). In its complaint, Farmers alleged that: Boguslaw was the only person to sustain bodily injury; defendants seek UIM benefits due to their consequential damages; and defendants' claims are subject to the UIM per-person limit of $100,000. Farmers further alleged that: Gonzalez had liability limits of $100,000, which he paid in settlement of defendants' claim; Gonzalez does not qualify as an underinsured motorist under the UIM provision of the Farmers policy; the American Family policy provided the same amount of coverage ($100,000/$300,000) as the Farmers policy; the Farmers policy is excess to the American Family policy; and Farmers is only required to pay UIM coverage to the extent its limits exceed those of the American Family policy, but the limits of the Farmers and American Family policies are the same. Farmers sought a declaration that, among other things, the per-person, $100,000 limit applies to defendants' claims and that it has no obligation to provide UIM coverage to defendants.
In January 2004, defendants filed a countercomplaint for declaratory judgment in which they alleged that: there are two potential tortfeasors; the $300,000 per-occurrence limit applies to the liability of each of the underinsured tortfeasors for a total of $600,000 in coverage because "more than one claimant exists"; both Milliner and Gonzalez were underinsured drivers; and under an opinion of the Fifth District Appellate Court, Roth v. Illinois Farmers Insurance Co., 324 Ill.App.3d 293, 257 Ill.Dec. 781, 754 N.E.2d 439 (2001), the per-occurrence limit is applicable to their claims because more than one claimant exists. Defendants also alleged that on September 28, 2000, they had a second automobile liability policy (No. 22-14754-62-68) issued by Farmers[2] and that *175 they made claims under both Farmers policies for Boguslaw's personal injuries and for their consequential damages, but Farmers denied that any further coverage applies. Defendants sought a declaration that the per-occurrence UIM limit of $300,000 applies to each of two tortfeasors, for a total of $600,000 in UIM coverage, and such limit applies to the gross amount of damages of all claims.
In February 2004, Farmers filed a motion for summary judgment. In the motion, Farmers argued that the per-occurrence UIM coverage limit does not apply to defendants' claims because defendants' consequential damages do not constitute a separate "bodily injury" under the policy and, therefore, the per-person limit of $100,000 applies. Farmers also argued that: Gonzalez was not an underinsured motorist because his UIM liability limits were the same as those in defendants' policy, leaving no gap between the limits; the "other insurance" language (i.e., the excess escape clause) precluded coverage of defendants' claims because the coverage limits of the American Family policy were the same as the limits of the Farmers policy; the maximum amount of potential coverage available to defendants in any event would be $80,000 because the exhaustion clause in the policy requires a setoff for amounts received; and finally, that, if the per-occurrence limit applied, defendants would be required to submit their derivative claims to arbitration.
Defendants subsequently filed a combined response to Farmers' motion and a cross-motion for summary judgment. Defendants' primary contention was that the per-occurrence UIM limit applies to their claims. Defendants also argued that Gonzalez was an underinsured motorist and that the excess exhaustion clause does not preclude coverage of their claims.
In an order entered on October 7, 2004, the court granted Farmers' motion for summary judgment and denied defendants' motion for the same. The court's written order does not indicate the basis for its decision. The record provided this court does not include any transcripts of proceedings, including the hearing on the cross-motions, so we do not know what oral rulings the court may have made. However, Farmers asserts, and defendants do not dispute, that the court found that the per-person limit applied to defendants' claims but did not rule on the other issues. This appeal followed.

ANALYSIS
On appeal, defendants contend, primarily, as they did in seeking summary judgment, that the per-occurrence UIM coverage limit of $300,000 applies to their claims. Defendants again base their position almost entirely upon Roth v. Illinois Farmers Insurance Co., 324 Ill.App.3d 293, 257 Ill.Dec. 781, 754 N.E.2d 439 (2001), which, they assert, supports the application of the per-occurrence coverage limit because more than one claimant exists. The central dispute over the application of per-person or per-occurrence UIM limits is framed, essentially, as a question of whether Roth or Martin v. Illinois Farmers Insurance, 318 Ill.App.3d 751, 252 Ill.Dec. 310, 742 N.E.2d 848 (2000), upon which Farmers relies, controls the result here. Farmers contends that, under Martin, the per-person coverage limit applies. We agree.
Summary judgment is appropriate where the pleadings, depositions, affidavits, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a *176 matter of law. 735 ILCS 5/2-1005(c) (West 2002).
The construction of an insurance policy is a question of law that is reviewed, like an appeal from a grant of summary judgment, de novo. McKinney v. Allstate Insurance Co., 188 Ill.2d 493, 497, 243 Ill.Dec. 56, 722 N.E.2d 1125 (1999); Thurman v. Grinnell Mutual Reinsurance Co., 327 Ill.App.3d 920, 923, 261 Ill.Dec. 839, 764 N.E.2d 130 (2002). In construing the language of an insurance policy, a court must ascertain and give effect to the intentions of the parties as expressed in the agreement. McKinney, 188 Ill.2d at 497, 243 Ill.Dec. 56, 722 N.E.2d 1125; de los Reyes v. Travelers Insurance Cos., 135 Ill.2d 353, 358, 142 Ill.Dec. 787, 553 N.E.2d 301 (1990). An insurance policy should be construed as a whole and all its provisions should be read together, rather than as isolated parts, to determine whether an ambiguity exists. de los Reyes, 135 Ill.2d at 358, 142 Ill.Dec. 787, 553 N.E.2d 301; General Insurance Co. of America v. Robert B. McManus, Inc., 272 Ill.App.3d 510, 514, 209 Ill.Dec. 107, 650 N.E.2d 1080 (1995). If the policy's words are unambiguous, there is no need for construction; the words must be given their plain and ordinary meaning and the provisions of the policy will be applied as written. McKinney, 188 Ill.2d at 497, 243 Ill.Dec. 56, 722 N.E.2d 1125; McManus, 272 Ill.App.3d at 514, 209 Ill.Dec. 107, 650 N.E.2d 1080.
In Martin v. Illinois Farmers Insurance, 318 Ill.App.3d 751, 252 Ill.Dec. 310, 742 N.E.2d 848 (2000), the court considered whether a derivative claim for UIM coverage, for loss of society, was subject to the per-person limit and determined that it was. Martin, 318 Ill.App.3d at 763, 252 Ill.Dec. 310, 742 N.E.2d 848. There, the plaintiff's husband was killed while riding as a passenger in a vehicle driven by his father, who was insured by one of the defendant insurance companies, Illinois Farmers. The plaintiff made a claim for the $100,000 UIM limit of liability against that defendant, which the defendant paid, and for which the plaintiff released that defendant from further liability. The plaintiff sought a declaratory judgment for an additional $100,000 under UIM coverage from that defendant, i.e., Illinois Farmers, as well as $200,000 in UIM coverage from the other defendant insurance company, which had issued two policies to the plaintiff. The trial court granted the defendants' motions to dismiss, finding there was no gap between the driver-tortfeasor's liability coverage and the plaintiff's UIM coverage, and that, therefore, the plaintiff did not have a valid UIM claim against Illinois Farmers. Martin, 318 Ill.App.3d at 757, 252 Ill.Dec. 310, 742 N.E.2d 848. On review, the court affirmed, finding that the driver's vehicle did not satisfy the definition of an underinsured motor vehicle because there was no gap in coverage between the plaintiff's UIM coverage and the amount of the tortfeasor's policy. Martin, 318 Ill.App.3d at 759, 252 Ill.Dec. 310, 742 N.E.2d 848.
In considering the plaintiff's contention that her loss of society claim was a separately compensable injury subject to its own per-person UIM limits, the court examined the language of the driver-tortfeasor's policy. Martin, 318 Ill.App.3d at 762-63, 252 Ill.Dec. 310, 742 N.E.2d 848. The Martin court held that the policy language at issue  which is essentially identical to the language in the Farmers policy in the instant case  was clear and unambiguous. Martin, 318 Ill.App.3d at 763, 252 Ill.Dec. 310, 742 N.E.2d 848. That policy language stated:
"`The uninsured motorist bodily injury limit for each person is the maximum we will pay for all damages resulting from bodily injury sustained by one person *177 in any one accident or occurrence. Included in this limit, but not as a separate claim or claims, are all the consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress.'" Martin, 318 Ill.App.3d at 762, 252 Ill.Dec. 310, 742 N.E.2d 848.
The court concluded that the policy clearly stated that the per-person limit of liability applied to all damages, and the limit included all the consequential damages sustained by other persons, such as loss of society. Martin, 318 Ill.App.3d at 763, 252 Ill.Dec. 310, 742 N.E.2d 848. Further, the court found such holding consistent with an entire line of Illinois cases which have held that loss of consortium is a derivative claim to the direct injury that causes it and such claim is generally included and subject to the policy limitations for bodily injury to one person. Martin, 318 Ill. App.3d at 763, 252 Ill.Dec. 310, 742 N.E.2d 848, citing Schweighart v. Standard Mutual Insurance Co., 227 Ill.App.3d 249, 169 Ill.Dec. 241, 591 N.E.2d 121 (1992); Berutti v. State Farm Mutual Automobile Insurance Co., 288 Ill.App.3d 997, 224 Ill. Dec. 655, 682 N.E.2d 216 (1997); Economy Preferred Insurance Co. v. Ingold, 302 Ill. App.3d 360, 236 Ill.Dec. 645, 707 N.E.2d 983 (1998).
In Roth, the plaintiff, the estate of a decedent insured, made separate claims for UIM coverage for the decedent's personal injuries and for wrongful death. There, the Fifth District rejected the defendant insurance company's contention that the per-person limitation of coverage included the consequential damages sustained by other persons, thus making any purported ambiguity in the per-occurrence limit irrelevant. Roth, 324 Ill.App.3d at 297-98, 257 Ill.Dec. 781, 754 N.E.2d 439. Rather, the court found the policy language ambiguous and, therefore, to be construed against the defendant. Roth, 324 Ill.App.3d at 299, 257 Ill.Dec. 781, 754 N.E.2d 439. On that basis, the Fifth District affirmed the lower court's award of $200,000 for the plaintiff. Roth, 324 Ill. App.3d at 299, 257 Ill.Dec. 781, 754 N.E.2d 439.
Contrary to defendants' contention that Roth should control the result here based on purported factual similarities, it is, rather, Martin that controls the instant case.
As previously noted, the policy language in the instant case is essentially identical to the language considered in Martin. Here, a separate endorsement for underinsured motorist coverage that is part of the policy issued by plaintiff states that "[a]ll of the terms and conditions of Part II-Uninsured Motorist Coverage C-apply to UNDERinsured Motorist Coverage C-1 in addition to the provisions of this endorsement." The "Part II-Uninsured Motorist Limits of Coverage" provide:
"The amounts shown in the Declarations are the limits of liability for Uninsured Motorist which apply subject to the following:
1. The uninsured motorist bodily injury limit for `each person' is the maximum we will pay for all damages resulting from bodily injury sustained by one person in any one accident or occurrence. Included in this limit, but not as a separate claim or claims, are all the consequential damages sustained by other persons, such as loss of services, loss of support, loss of consortium, wrongful death, grief, sorrow and emotional distress."
Because the policy language at issue here is identical to that in Martin, it, too, like the language in Martin, is clear and unambiguous. Martin, 318 Ill.App.3d at 763, 252 Ill.Dec. 310, 742 N.E.2d 848. The *178 policy issued by plaintiff clearly states, as in Martin, that the per-person limit of liability applies to all damages, and the limit includes, "`not as a separate claim or claims all the consequential damages sustained by other persons.'" (Emphasis in original.) Martin, 318 Ill.App.3d at 763, 252 Ill.Dec. 310, 742 N.E.2d 848. Following the holding in Martin, the per-person UIM coverage limit applies here as well: defendants' claims for consequential damages are, therefore, not separate claims, but are included in the $100,000 per-person limit. Martin, 318 Ill.App.3d at 763, 252 Ill.Dec. 310, 742 N.E.2d 848.
Although defendants concede that the per-person limit could apply here, they assert a possible ambiguity in the policy and rely heavily on similarities between this case and Roth. However, such similarities are not dispositive. In addition to factual similarities with Roth that are asserted by defendants, there are also factual similarities with Martin. For example, defendants here were paid the $100,000 liability limit by Gonzalez, similar to the payment of $100,000 from the tortfeasor's insurer to the plaintiff in Martin. More significantly, in terms of similarities in policy language, as already noted, the language at issue in Martin is identical to the language here. That language is, again, clear and unambiguous. Martin, 318 Ill. App.3d at 763, 252 Ill.Dec. 310, 742 N.E.2d 848. Therefore, similarities of policy language would not compel us to follow Roth instead of Martin. Further, we acknowledge, as defendants point out, that Roth was decided after Martin. However, Roth did not directly address Martin, and, in any event, we are not bound to follow Roth. See, e.g., Gillen v. State Farm Mutual Automobile Insurance Co., 215 Ill.2d 381, 392 n. 2, 294 Ill.Dec. 163, 830 N.E.2d 575 (2005); see also Schiffner v. Motorola, Inc., 297 Ill.App.3d 1099, 1102, 232 Ill.Dec. 126, 697 N.E.2d 868 (1998) (decisions of equal courts are not binding on other equal courts under principle of stare decisis).
Moreover, our supreme court has held that, where one person received bodily injuries, in one motor vehicle accident, claims for wrongful death fell within the ambit of the policy's UIM coverage limits of $100,000. McKinney, 188 Ill.2d at 498, 243 Ill.Dec. 56, 722 N.E.2d 1125. In so deciding, the supreme court noted that the same conclusion has been reached by the appellate court "in virtually every published case in which similar policy language was construed." McKinney, 188 Ill.2d at 498, 243 Ill.Dec. 56, 722 N.E.2d 1125, citing Ingold, 302 Ill.App.3d 360, 236 Ill.Dec. 645, 707 N.E.2d 983; Berutti, 288 Ill.App.3d 997, 224 Ill.Dec. 655, 682 N.E.2d 216; Cross v. Country Cos., 188 Ill.App.3d 847, 136 Ill.Dec. 471, 544 N.E.2d 1246 (1989); Creamer v. State Farm Mutual Automobile Insurance Co., 161 Ill.App.3d 223, 112 Ill.Dec. 748, 514 N.E.2d 214 (1987). Furthermore, the court acknowledged that the Fifth District had reached the opposite result in Stearns v. Millers Mutual Insurance Ass'n of Illinois, 278 Ill.App.3d 893, 215 Ill.Dec. 506, 663 N.E.2d 517 (1996), and overruled Stearns. McKinney, 188 Ill.2d at 500 (overruling Stearns because the court "found an ambiguity where none existed").
Again, based on Martin, the policy language clearly and unambiguously provides that the per-person UIM coverage limit applies and that defendants' claims for consequential damages are included in the per-person limit. See Martin, 318 Ill. App.3d at 763, 252 Ill.Dec. 310, 742 N.E.2d 848. Therefore, the circuit court properly granted summary judgment in favor of Farmers. Having determined that the per-person coverage limit applies to defendants' claims, we do not reach defendants' additional issues that are based on an application of the per-occurrence limit. Accordingly, *179 for the above-stated reasons, we affirm the judgment of the circuit court.
Affirmed.
TULLY and FROSSARD, JJ., concur.
NOTES
[1] Defendants' last name also appears in the record as Marchiwiany.
[2] Defendants failed to attach a copy of this policy to their complaint and Farmers denied that there was more than one policy in effect on the date of the accident. Nothing in the record establishes the existence of a second policy issued to defendants by Farmers.